# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE LUDWIG,                          :
    Plaintiff,                          :
                             :
    v.                                  :          **CIVIL ACTION NO. 25-CV-1213**
                             :
JOSEPH TERRA, *et al.*,                  :
    Defendants.                         :

## MEMORANDUM

**PEREZ, J.**                                          **AUGUST 12, 2025**

Plaintiff George Ludwig, a convicted prisoner incarcerated at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his rights arising from events that occurred at that facility. Currently before the Court is Ludwig's Complaint ("Compl." (ECF No. 1)), in which he asserts claims against the following SCI Phoenix employees: Sergeant Cramp, Corrections Officers Grennan, Porto, Wallace, Clemons, Carter, and Grant, Lieutenants Patterson, McCafferty, and Aguilar, Superintendent J. Terra, Unit Manager Strenkowski, Watson, and Edwards. (Compl. at 1-4.) Ludwig asserts his claims against the Defendants in their individual and official capacities. (*Id.*) For the following reasons, the Court will dismiss with prejudice Ludwig's official capacity claims, his claims based on the Pennsylvania Constitution, his claims against McCafferty, Aguilar, and Strenkowski based on their handling of grievances, his Ninth Amendment claims, his Eighth Amendment claims, his Fourth Amendment claims, and his First Amendment retaliation claims against Cramp, Grennon, Porto, Wallace, Clemons, Grant, Watson, and Edwards. The Court will dismiss without prejudice Ludwig's Equal Protection claims, his retaliation claim against Patterson, his claim against Defendant Terra, his Fourteenth Amendment due process claim, and

his request for injunctive relief for failure to state a claim. Ludwig's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. He will be granted leave to file an amended complaint.

## I.    FACTUAL ALLEGATIONS[1]

The gravamen of Ludwig's claim is that he was subjected to verbal harassment, threats, and regular body searches, primarily by Corrections Officer ("CO") Grennan and, when he filed grievances in response to this treatment, he was subjected to retaliation by Grennon and the other named Defendants. The events giving rise to Ludwig's claims arose at SCI Phoenix. Ludwig describes himself as disabled and disfigured and alleges that he relies on crutches and a wheelchair to accommodate his disability. (Compl. at 4.) He also alleges that in accordance with a prescribed pain management plan, he is issued medication three times daily. (*Id*.) Most of the incidents described in the Complaint occurred in the medication distribution area. (*Id*.)

On March 6, 2023, during medication distribution, Defendant Grennon searched, threatened, and demeaned Ludwig in the presence of other inmates, and Ludwig filed a grievance in response. (*Id*. at 5.) When he learned that Grennon had told a nurse that she "knows that [Ludwig] is selling his medications," and that she was "going to catch him," Ludwig filed another grievance. (*Id*.) The next day, a nurse told Ludwig that Grennon had told him that Ludwig was "selling his meds," and that the nurse should thoroughly check him. The nurse required Ludwig to spread his buttocks in the course of a search. (*Id*.)

---

[1] The factual allegations set forth in this Memorandum are taken from Ludwig's Complaint (ECF No. 1). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Ludwig's pleading will be corrected for clarity.

Grennon received notice of Ludwig's grievances at some time prior to March 9, 2023, and on that date she yelled in Ludwig's face during medication distribution and told the nurse to give Ludwig "brake fluid." (*Id.*)  She also referred to Ludwig as a "white-boy druggie" who "thinks he's slick," and required Ludwig to remove his mask and open his mouth for inspection following medication distribution, after which she insulted and threatened him. (*Id.*)  On March 12, 2023, Grennon again searched Ludwig after he had received his medication, yelling profanity laced threats and insults at him as she performed the search. (*Id.* at 6.)  Ludwig filed a third grievance in response. (*Id.*)  Three days later, again during medication distribution, Grennon shoved Ludwig from behind, spit on his medication, threatened and insulted him. (*Id.*)  Ludwig filed a fourth grievance in response. (*Id.*)  The next day, Grennon searched, harassed, insulted and threatened Ludwig during all three of the daily medication distributions. (*Id.*)

On March 17, 2023, Ludwig was approached by Defendant McCafferty, who had been assigned to address Ludwig's grievances. (*Id.*)  McCafferty told him that, "it would be in [his] best interests to sign off on withdrawing his grievances," and in return for doing so, McCafferty would talk to Grennon and ask her to "back off." (*Id.*)  Ludwig refused. (*Id.*)  Two days later, upon encountering Ludwig, Grennon yelled at him to place his hands on the wall, adding that she didn't trust "druggies." (*Id.* at 7.)  A different CO approached and escorted Ludwig to medication distribution, telling him to ignore Grennon. (*Id.*)  A week later, upon spotting Ludwig at medication distribution, Grennon freed the pepper spray on her utility belt and stated, "oh yes, it's about to go down." (*Id.*)  Three days later, Ludwig met with Chief Grievance Officer Defendant Aguilar who, like McCafferty, told him that it would be in his best interests to withdraw his grievances against Grennon. (*Id.*)  Again, Ludwig, refused. (*Id.*)  Approximately one month later, Grennon threatened Ludwig during his recreation period. (*Id.*)

On May 2, 2023, Defendant Cramp entered Ludwig's cell and, within view of other inmates, ordered him to pull down his pants and show Cramp his broken hip. (*Id*. at 7-8.) Ludwig responded that he needed to use the bathroom, and Cramp, along with other inmates, proceeded to watch Ludwig move his bowels. (*Id*. at 8.) While doing so, Cramp commented to Ludwig that he had received credible evidence that he was selling his medication, and also remarked that he hated drug dealers and that Ludwig was both "in his cross hairs" and "on his radar." (*Id*.) In response, Ludwig filed a grievance against Cramp. (*Id*.) Ludwig also reported the incident to Defendants McCafferty and Strenkowski and requested that a Prison Rape Elimination Act ("PREA") complaint be filed. (*Id*.) He also reported Cramp's conduct to non-Defendant Major Fitzgerald-Young. Fitzgerald-Young later interviewed Ludwig and advised him that neither McCafferty nor Strenkowski had filed a PREA complaint, that she had reviewed video footage of Cramp's conduct, but there was no report describing the incident, and that further investigation would be conducted. (*Id*. at 8-9.) Ludwig alleges that the grievance he filed against Defendant Cramp was denied by Defendant Strenkowski based solely on Cramp's denial of his allegations. (*Id*. at 9.) On May 1, 2023, while in his cell Ludwig observed Defendant Cramp open and read his mail, leave and then return with non-Defendant Lieutenant Valdez, whereupon Cramp opened Ludwig's cell door, verbally harassed him and made degrading statements. (*Id*.) Ludwig filed a second grievance against Cramp. (*Id*.)

On May 30, 2023, after receiving his medication, Ludwig was stopped and searched by Grennon, who ordered Ludwig to remove his mask and repeatedly referred to him as a "white-boy druggie." (*Id*.) On June 13, 2023 in the medication distribution area, Defendant Carter told Defendant Grant that Ludwig was "da one Grennon talking bout." (*Id*. at 9-10.) Grant then ordered other inmates to "get back and watch me situate this f***in rat," "rat" being a reference

to Ludwig having filed grievances.  (*Id*. at 10.)  Grant then ordered Ludwig to remove his mask and open his mouth to be searched and yelled threats and obscenities at him.  (*Id*.)  In response, Ludwig filed a grievance against Grant.  (*Id*.)  The next day, Grennon stopped Ludwig as he was leaving the medication distribution area, ordered him to remove his mask and open his mouth, and remarked, "how was your night . . . yeah, I'm just getting started."  (*Id*.)  Ludwig filed another grievance against Grennon.  (*Id*.)  Later that day, Ludwig was mistreated, harassed, humiliated, ridiculed, and threatened by Defendants Wallace, Watson, Edwards, and Clemons, allegedly in retaliation for the grievances filed against Grennon.  (*Id*.)  Ludwig responded by filing two additional grievances.  (*Id*.)

The next day, Grennon stopped Ludwig as he was leaving the medication distribution area and remarked, "you know what to do when you see Ms. G or are you druggie's memories that bad," and "I heard you were the guest of honor at the party last night," a reference to the previous day's mistreatment by Wallace, Watson, Edwards, and Clemons.  (*Id*.)  The next day, after Ludwig received his medication, Grennon met him at the exit and ordered him to remove his mask and open his mouth, while insulting, threatening, and ridiculing him.  (*Id*. at 10-11.)  Ludwig filed yet another grievance against Grennon.  (*Id*. at 11.)

On June 20, 2023, as Ludwig was leaving the medication distribution area, Defendant Wallace shouted at him that Defendant Grennon had put Ludwig "on blast," had told people that Ludwig had lied about the allegations in the grievances filed against Defendant Strenkowski, and that he was a "rat."  (*Id*.)  Wallace then proceeded to assume a boxing stance and advance towards Ludwig, who was at the time on crutches.  (*Id*.)  Ludwig, in response, filed a grievance against Wallace.  (*Id*.)  The next day, Wallace made threatening gestures towards Ludwig during his recreation period.  (*Id*.)  Ludwig reported this conduct to Defendant Carter and filed another

grievance against Wallace.  (*Id*.)  The next day, Clemons made disparaging remarks to Ludwig, allegedly in retaliation for Ludwig filing grievances.  (*Id*.)

On August 4, 2023, while Ludwig was in the SCI Phoenix barber shop, Grennon, who had followed Ludwig there, yelled, "Oh no, druggies don't get free haircuts when Ms. G is on, let's go, get out Ludwig, out right now!"  (*Id*. at 11-12.)  Grennon became irate, screamed profanities at Ludwig, and remarked, "you make me sick . . . get out of my face."  (*Id*. at 12.)

On September 18, 2023, Defendant Wallace repeatedly slammed Ludwig's cell door, and referred to him as a liar, a pussy, a bitch, and a rat.  (*Id*.)  While Ludwig was eating, he asked, "did you get enough cheese rat," and later remarked, "you're gonna get f***ed up for lying on Sgt. Cramp," and "you're gonna be sorry you f***ed with my old head Ms. G."  (*Id*.)  On November 17, 2023, while returning to his cell from the main yard, Ludwig was stopped and searched by Defendant Grennon, who struck his genitals while she patted him down.  (*Id*.)  While searching his jacket pockets, Grennon repeatedly jabbed at Ludwig, knocking him off balance.  (*Id*. at 12-13.)  When Ludwig asked her to take it easy because he had only one good leg, Grennon ordered him to "get over to the shelf, empty your pockets, put down your crutches, get your hands over your head and stand on your one good leg."  (*Id*. at 13.)  Ludwig filed another grievance in response.  (*Id*.)

Ludwig alleges that Defendants Porto and Grennon repeatedly targeted him with harassing searches, and that during one search, Porto reached into Ludwig's pocket and grabbed and twisted his genitals.  (*Id*.)  Ludwig initiated an investigation into the incident but was informed that because Porto's hand was in his pocket, footage of the incident could not substantiate his allegations.  (*Id*.)

On January 17, 2025, Ludwig was summoned to a hearing where he learned that Defendant Patterson issued an allegedly retaliatory false misconduct accusing Ludwig of lying to an employee. (*Id.*) The misconduct contributed to the Pennsylvania Parole Board's imposition of a one-year sanction on Ludwig. (*Id.*)

Ludwig asserts claims for violations of his First, Eighth, Ninth,[2] and Fourteenth Amendment rights, claims based upon violations of the Pennsylvania Constitution,[3] and state law claims for intentional infliction of emotional distress, breach of contract, conspiracy, and

---

[2] The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. This claim is not developed and, in any event, the Court cannot discern any basis for a Ninth Amendment violation here. Therefore, Ludwig's Ninth Amendment claims will be dismissed with prejudice. *See Bowens v. Matthews*, 765 F. App'x 640, 644 (3d Cir. 2019) (*per curiam*) (summarily affirming where inmate "ha[d] not alleged the violation of any specific fundamental right that might be protected by the Ninth Amendment").

[3] "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*). As there is no private right of action for damages under the Pennsylvania Constitution, these claims will be dismissed with prejudice. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

negligence.  He also asserts that the grievance system available at SCI Phoenix is inadequate.  As relief, he seeks a declaratory judgment,[4] injunctive relief,[5] and money damages.

## II.    STANDARD OF REVIEW

Although Ludwig has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

---

[4] Ludwig requests a declaration that the Defendants' conduct violated his constitutional rights. (Compl. at 15-17.)  Declaratory relief is unavailable to adjudicate past conduct, so Ludwig's request for this relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[5] Ludwig requests both preliminary and permanent injunctive relief.  (Compl. at 17-18.)  In light of the Court's disposition of his claims, Ludwig's request for injunctive relief will be denied without prejudice at this time.

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Ludwig is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). *See also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it by name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support."). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Vogt*, 8 F.4th at 185.

## III.    DISCUSSION

Ludwig asserts claims based on alleged violations of his constitutional rights.[6]  The

vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. §

1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to

be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957

F.3d 366, 374 (3d Cir. 2020).

### A.    Official Capacity Claims

Ludwig asserts official capacity claims against the Defendants and seeks money

damages.  (*See* Compl. at.)  Official capacity claims are indistinguishable from claims against the

governmental entity that employs the Defendants.  *See Kentucky v. Graham*, 473 U.S. 159, 165-

66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action

against an entity of which an officer is an agent.' ") (quoting *Monell v. N.Y.C. Dept. of Soc.*

---

[6] Ludwig asserts that the Defendants' negligence provides a basis for these claims.  (*See*, *e.g.*,
Compl. at 25-26.)  The United States Supreme Court has held that § 1983 claims may not be
predicated on a state actor's mere negligence.  *See Canton v. Harris*, 489 U.S. 378, 387 (1989)
(holding that mere negligence in training cannot form basis of § 1983 liability); *Daniels v.
Williams,* 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable
under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an
official causing unintended loss of or injury to life, liberty, or property").  A claim based on mere
negligence is insufficient to allege a plausible Eighth Amendment violation.  *See Whitley v.
Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in
good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments
Clause, whether that conduct occurs in connection with establishing conditions of confinement,
supplying medical needs, or restoring official control over a tumultuous cellblock.").  To the
extent Ludwig's constitutional claims are based on any negligent conduct engaged in by the
Defendants, they are dismissed with prejudice.

*Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  Thus, Ludwig's official capacity claims against the individual defendants, all of whom appear to be employed by the DOC (*see* Compl. at 2-4), are really claims against the Commonwealth, which is shielded from Section 1983 suits by Eleventh Amendment immunity and is not considered a "person" subject to liability under Section 1983. *See also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of Section 1983). Accordingly, Ludwig's claims for money damages against the Defendants in their official capacities will be dismissed with prejudice.  The Court will address Ludwig's claims against the Defendants in their individual capacities below.

**B.    Claims Based on Inadequacy of Grievance System**

Ludwig alleges that during the period described in his Complaint, he filed numerous grievances against Defendants Cramp, Grennon, Wallace, Grant, and Strenkowski, and further alleges that the grievance system in place at SCI Phoenix is constitutionally inadequate because it does not provide for impartial review of the issues raised.  (Compl. at 14.)  The Court understands Ludwig to be asserting constitutional claims against Defendants McCafferty and Aguilar, who are alleged to have discussed Ludwig's grievances pertaining to Grennon with him and advised him to drop them, (*id*. at 6, 7), and against Strenkowski, who denied Ludwig's grievance against Cramp (*id*. at 9), based on their participation in the grievance process.  These claims are not plausible and will be dismissed.

Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised by Ludwig predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (*per curiam*) ("any allegations of improprieties in the handling of his grievance" do not raise constitutional concerns and do "not state a cognizable claim under § 1983."); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Moreover, a prison official's involvement in the grievance process, alone, is not sufficient to show personal involvement in the underlying events. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and

Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").

Ludwig's claims based on the grievance system are not plausible and will be dismissed. This dismissal will be with prejudice because the deficiency described cannot be cured through further pleading. *See Drummond v. Angelucci*, No. 23-4767, 2024 WL 2136284, at *11–12 (E.D. Pa. May 10, 2024) (dismissing claims based on prison grievance system with prejudice at screening stage); *Caterbone v. Lancaster Cnty. Prison*, No. 19-2052, 2019 WL 2774162, at *3 (E.D. Pa. July 2, 2019), *aff'd*, 811 F. App'x 721 (3d Cir. 2020) (same); *Easton v. Penchishen*, No. 21-CV-5464, 2022 WL 407640, at *2 (E.D. Pa. Feb. 10, 2022) (same).

### C.    Eighth Amendment Claims

Ludwig alleges that Defendants Cramp, Grennon, Wallace, Clemons, Grant, Watson, and Edwards verbally threatened and harassed him. Additionally, he alleges that Defendant Grennon, on more than one occasion, pushed him; that Defendants Grennon and Porto, while searching him, hit or squeezed his genitals; and that Defendants Wallace and Grant called him a "rat" in front of other inmates. He seeks money damages for violations of his Eighth Amendment rights. For the following reasons, these claims are not plausible.

#### 1.    Claims Based on Verbal Abuse and Threats

In his Complaint, Ludwig describes numerous instances in which Defendants Cramp, Grennon, Wallace, Clemons, Grant, Watson, and Edwards verbally threatened, harassed, and humiliated him. He also describes instances in which some of them engaged in threatening gestures, such as when Grennon allegedly loosened the pepper spray on her utility belt, or when Wallace assumed a boxing stance, acting as if he intended to punch Ludwig. Finally, he alleges

that on two occasions, Grennon pushed or shoved him.  He seeks money damages against these Defendants based on these attacks.

Threats of bodily harm does not state a § 1983 claim because verbal threats or taunts, without more, are insufficient to violate the Constitution.  *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *Smith v. Mun. of Lycoming Cnty.*, 335 F. App'x 147, 150 (3d Cir. 2009) ("Mere verbal harassment or abuse . . . is not a civil rights violation." (citation omitted)); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").  The same is true of offensive gestures.  *See McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (explaining that threats and gestures do not amount to constitutional violations); *Wright v. O'Hara*, No. 00-1557, 2004 WL 1793018, at *7 (E.D. Pa. Aug. 11, 2004) ("Where plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit.").  *See also Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010) (*per curiam*) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotations omitted)).

Ludwig does not allege that the verbal threats, the threatening gestures, or the shoves resulted in any physical harm.  As such, he cannot state a plausible constitutional claim, and these claims will be dismissed.  *See, e.g., Sears v. McCoy*, 815 F. App'x 668, 670 (3d Cir. 2020)

(holding that dismissal at screening of Plaintif'"'s verbal harassment claim was proper and noting that "[a] prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983"); *Concepcion v. Russell*, No. 21-1060, 2021 WL 2529816, at *5 (E.D. Pa. June 21, 2021) (dismissing claim for harassment at screening and noting that "mocking and verbal harassment of a prisoner simply do not give rise to an independent constitutional violation").

### 2.    Claims Against Grennon and Porto

Ludwig also alleges that on two occasions, during pat-down searches, Defendants Grennon and Porto, respectively, hit his testicles and squeezed and twisted his genitals through his clothing.  Liberally construed, Ludwig may be asserting a claim of sexual abuse based on this conduct.  However, this claim, as pled, is not plausible.

Sexual abuse and harassment violate an inmate's rights under the Eight Amendment, which prohibits cruel and unusual punishment.  *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("Whether sexual abuse of inmates by prison officials offends the Eighth Amendment is a matter of first impression in our Court.  Today, we join numerous sister Circuits in holding that prison sexual abuse can violate the Constitution.").  Claims for sexual abuse and harassment are evaluated similarly to excessive force claims in that the prisoner must allege facts plausibly establishing both objective and subjective components.  *Id*. at 475 (stating that the misconduct "must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind").  Regarding the subjective component, the Court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm." *Id*. at 475 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  Regarding the objective prong, the Court considers

whether the action is "repugnant to the conscience of mankind" or whether it is "sufficiently serious or severe." *Id*. at 475-76 (citations omitted). However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 475 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. *Ricks*, 891 F.3d at 471 ("Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual *contact*.") (emphasis added); *Williams v. Wetzel*, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eight Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); *McCain v. Wetzel*, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"); *Washington v. Gilmore*, No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct physical contact" with the alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *McCain*, 2018 WL 1211507, at *3 (citing *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)).

Ludwig describes two isolated instances of offensive, arguably sexual contact. However, courts that have addressed this issue have found that isolated instances of inappropriate conduct by prison officials do not violate an inmate's constitutional rights. *See e.g., Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (holding that inmate had not alleged an Eighth Amendment violation where correctional officer allegedly touched inmate's testicles through his clothing

during a single pat-down frisk); *Washington v. Harris*, 186 F. App'x 865, 866 (11th Cir. 2006) (holding that inmate failed to state Eighth Amendment claim where prison guard "crept up behind [the prisoner inmate] while he was working," grabbed his genitals, kissed him on the mouth, and threatened to perform oral sex on him); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (holding that plaintiff's allegations that guard grabbed and rubbed his buttocks in a degrading manner during a shakedown was insufficient to establish an Eighth Amendment violation); *Young v. Brock*, No. 10-1513, 2012 WL 385494, at *4 (D. Colo. Feb. 7, 2012) (holding that plaintiff's allegations that he was subjected to unnecessary and unwelcomed sexual touching by prison guard in course of a single pat-down search did not state Eighth Amendment claim, particularly where plaintiff conceded that pat-down had a penological purpose); *Pantusco v. Sorrell*, No. 09-3518, 2011 WL 2148392, at *7–8 (D.N.J. May 31, 2011) (holding that plaintiff's Eighth Amendment claim failed because a single instance of groping during a routine pat-down frisk did not amount to cruel and unusual punishment).  Because Ludwig alleges only isolated incidents occurring during pat-down searches involving *de minimis* contacts, these claims against Grennon and Proto will be dismissed.

### 3.    Failure to Protect

Ludwig also asserts that the Defendants failed to protect him, and the Court liberally construes this claim to be based on Wallace and Grant referring to him as a "rat" because he filed grievances against Cramp, Grennon, Wallace, Grant, and Strenkowski.  However, this does not give rise to a plausible claim.

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  "Being violently assaulted in prison is simply not part of the penalty

that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (quotation marks omitted). To state a plausible failure to protect claim, a plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *See Hamilton*, 117 F.3d at 746. Deliberate indifference is a subjective standard. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Plaintiff must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Id.* at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id.* at 133. But at the same time, "subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.*; *see also Kedra v. Schroeter*, 876 F.3d 424, 442 (3d Cir. 2017) ("[T]he obviousness of risk [is] a permissible and highly relevant basis from which to infer actual knowledge."). Moreover, "an inmate need not wait until an actual attack occurs to obtain relief." *Moore v. Mann*, 823 F. App'x 92, 96 (3d Cir. 2020).

"Courts in the Third Circuit have recognized that being labeled a 'snitch' may constitute an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate." *Williams v. Thomas*, No. 12-1323, 2013 WL 1795578, at *5 (E.D. Pa. Apr. 29, 2013) (citing cases). However, courts recognize that where an inmate is deemed a snitch for reporting correctional officers, as opposed to other inmates, there is no substantial risk of harm. *Drummond v. Angelucci*, No. 23-4767, 2024 WL 2136284, at *10 n.14 (E.D. Pa. May 10, 2024) (citing *Jackson v. O'Brien*, No. 18-0032, 2021 WL 3174687, at *4 (W.D. Pa. July 27, 2021) ("An officer complaining publicly that an inmate is snitching on him or

other corrections officers . . . does not, without more, create a substantial risk of serious harm to

the inmate.")).  These opinions reason that "[w]hile prisoners may be motivated to harm a fellow

inmate who is or could be informing on them, that motivation for preserving inmate anonymity

and solidarity does not exist when the inmate is accused of 'snitching' to prison officials about a

corrections officer or other prison official—DOC staff who the inmates so often view as opposed

to their interests."  *Id.*  Here, Ludwig alleges he was called a "rat" because he filed grievances

against correctional officers, not because he informed on other inmates.  Under *Jackson*, this

does not create the basis for a plausible claim based on a substantial risk of harm, and Ludwig's

claim, accordingly, will be dismissed.

### D.    Fourth Amendment Claims Based on Repeated Searches

Ludwig alleges that on numerous occasions, he was ordered to open his mouth for a

search, that on one occasion he was ordered to spread his buttocks for a search by a non-

Defendant nurse, and that on one occasion Defendant Cramp ordered him to remove his pants

while Ludwig was in his cell in view of other inmates.  (*See* Compl.)  Liberally construed,

Ludwig may be asserting a Fourth Amendment claim based on these searches.  However, this

claim is not plausible.

The Fourth Amendment to the United States Constitution, as incorporated to the states

through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their

persons ... against unreasonable searches and seizures."  U.S. Const. amend. IV.  The United

States Supreme Court has held that inmates do not have a Fourth Amendment right to be free of

strip searches under all circumstances. *See Bell v. Wolfish*, 441 U.S. 520 (1979).  Following *Bell*,

in *Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016), the United States Court of Appeals

for the Third Circuit held that the Fourth Amendment "grants inmates a limited right of bodily

privacy, subject to reasonable intrusions necessitated by the prison setting." The *Parkell* court emphasized that, while the Fourth Amendment "applies to bodily searches in prison," the "contours of prisoners' Fourth Amendment rights" are "very narrow." *Id.* at 326. Application of the Fourth Amendment in this context requires a balancing of interests. *See id.*

Although strip searches constitute a "significant intrusion on an individual's privacy," *United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), where prison officials conduct such searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010), *aff'd*, 566 U.S. 318 (2012). When determining the reasonableness of a strip search, courts must balance "the need for the particular search against the invasion of personal rights that the search entails" and consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 558-59 (holding that the prison's policy of strip and visual body cavity searches, requiring inmates to stand naked, lift their genitals and bend over and spread their buttocks for visual inspection, did not violate an inmate's Fourth Amendment rights); *see also Brown v. Blaine*, 185 F. App'x 166, 169-70 (3d Cir. 2006) (finding no constitutional violation where inmate was required to lift his genitals, spread his buttocks, and then place his hands on his head and sweep his mouth with his fingers).

The Supreme Court also held that it is constitutional to conduct a full strip search of an individual detained in the general population of a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something. *Florence*, 566 U.S. at 328 (explaining that "correctional officials must be permitted to devise reasonable search

policies to detect and deter the possession of contraband in their facilities"); *see also Small v. Wetzel*, 528 F. App'x 202, 207 (3d Cir. 2013) (holding that it is constitutional to conduct a full strip search of an inmate in general population, "regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something") (citing *Florence*). Moreover, there is no violation of a prisoner's constitutional rights by conducting the strip search, including a visual body cavity search, in front of other inmates. *See Illes v. Beard*, No. 12-964, 2013 WL 2285565, at *5 (M.D. Pa. May 23, 2013); *Eby v. Karnes*, No. 19-2069, 2020 WL 1550634 at *5 (M.D. Pa. Apr. 1, 2020) (dismissing complaint with prejudice on statutory screening and finding no violation where search was performed in front of other inmates and included a visual cavity search).

"The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. Inmate search policies are constitutional if they "strike a reasonable balance between inmate privacy and the needs of the institutions." *Florence*, 566 U.S. at 339. Under *Bell*, a court must give considerable weight to the "place in which [the search is conducted]" – prisons being "places of involuntary confinement of persons who have a demonstrated proclivity for antisocial, criminal, and often violent, conduct," *Hudson*, 468 U.S. at 526, and considerable deference to "the justification for initiating it." *Bell*, 441 U.S. at 559.

Throughout his Complaint, Ludwig alleges that Grennon and other COs accused him of selling his medication and called him a "druggie." (*See* Compl.) The demands from Grennon and others that Ludwig remove his mask and open his mouth for a search are all alleged to have

occurred after medication distribution in the medication distribution area.  Similarly, the non-Defendant nurse's request that Ludwig spread his buttocks for a search was allegedly conducted in the medical distribution area after Grennon instructed the nurse to "check [Ludwig] good." Cramp's search took place in Ludwig's cell, but Ludwig does not allege with any clarity what gave rise to the search.  Ludwig does not allege that he was harmed in the course of these searches, and the circumstances he describes do not rise to the level of unreasonableness in light of the very narrow interest prisoners maintain in their Fourth amendment rights.  *See, e.g., Eby*, 2020 WL 1550634 at *5.  This claim will be dismissed with prejudice.

### E.    Fourteenth Amendment Claim Based on Issuance of False Misconduct

Ludwig alleges that Defendant Patterson issued a false misconduct accusing him of lying to an employee, and that he learned about the misconduct in the course of the related disciplinary hearing.  (Compl. at 13.)  The Court liberally construes his claim against Patterson as arising under the Fourteenth Amendment due process clause.  The claim, however, is not plausible.

"[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process."  *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*).  Instead, "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."  *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*).

More specifically, a convicted prisoner cannot state a claim based on the filing of false disciplinary charges against him where he has received a hearing where he could rebut the charges.  *See, e.g., Talley v. Griesmer*, No. 19-3796, 2023 WL 3002742, at *2 (3d Cir. Apr. 19, 2023) (*per curiam*) ("The filing of false disciplinary charges does not violate the Constitution as long as the inmate was granted a hearing and an opportunity to rebut the charges."); *London v.*

*Evans*, No. 19-559, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false

disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a

hearing and an opportunity to rebut the charges."); *King v. Quigley*, No. 18-CV-5312, 2019 WL

342710, at *2 (E.D. Pa. Jan. 25, 2019) (finding that the plaintiff had failed to state a due process

claim premised on a false misconduct report where he had not alleged that there were no

procedural protections provided).

Ludwig alleges that he learned of the misconduct in the course of a hearing.  (Compl. at

13.)  He does not allege that he was denied the opportunity to rebut the charges included in the

misconduct.  (*See id*.)  Because the allegations in the Complaint reflect that he was granted some

level of procedural protection, Ludwig has not stated a plausible claim, and this claim will be

dismissed.  Ludwig will be granted leave to amend this claim.

### F.    First Amendment Retaliation

Ludwig alleges that after he filed grievances against Grennon, Cramp, Wallace, Grant,

and Strenkowski, and that they and Defendants Porto, Clemons, Watson, and Edwards subjected

him to threats and verbal harassment in retaliation for the filing of those grievances.  (*See*

Compl.)  Additionally, he alleges that Defendant Patterson filed a false misconduct report in

retaliation for the grievances he filed.  (Compl. at 13.)  The Court understands Ludwig to be

asserting a First Amendment retaliation claim.  However, the claim as pled is not plausible.

Although a prisoner has no constitutional right to a grievance process, *see Gerholt*, 858 F.

App'x at 34, a prisoner can state a claim based on retaliation for filing a grievance.  *See*

*Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (holding that a prisoner's filing of a

grievance is constitutionally protected conduct) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d

Cir. 2003); *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)).  In order to state a plausible

First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell*, 318 F.3d at 530; *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422.

Verbal threats alone do not constitute an adverse action for purposes of pleading a plausible retaliation claim. *See, e.g., Chruby v. Kowaleski*, 534 F. App'x 156, 161 (3d Cir. 2013). *See also Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (finding no adverse action based on allegations that defendants called plaintiff a "marked man" and threatened his "days were numbered"); *Jackson v. O'Brien*, No.18-0032, 2021 WL 3174687, at *5 (W.D. Pa. July 27, 2021) ("inmate of ordinary firmness does not experience an adverse action when a prison official calls him a snitch for officially or unofficially complaining about other prison officials").

Accordingly, to the extent Ludwig's retaliation claims arise from the threats and verbal abuse he describes in his Complaint, they are not plausible, and these claims will be dismissed. Additionally, while Ludwig describes comments made by the other Defendants allegedly as harassment relating to grievances he filed against other COs (*see* Compl. at 11, 12), he alleges no adverse action related to those grievance-related instances other than the false misconduct filed by Patterson.

Although the filing of a false misconduct does not implicate a due process concern, it can constitute an adverse action that will support a First Amendment retaliation claim. *Mitchell*, 318 F.3d at 530-31. But Ludwig's allegation with respect to the misconduct filed by Patterson is conclusory and undeveloped and therefore not plausible. For example, Ludwig does not connect Patterson's filing of the false misconduct to any constitutionally protected conduct in which he engaged. He only alleges in conclusory fashion that the misconduct was "retaliatory." (Compl. at 13.) Moreover, Patterson is alleged to have filed the misconduct in January, 2025, and all of the other allegations in the Complaint describe conduct that occurred in 2023. (*See* Compl.) Therefore, the timing of the misconduct is not suggestive of retaliation for the grievance Ludwig alleges he filed. Ludwig's retaliation claim against Patterson is not plausible and will be dismissed. He will be granted leave to amend this claim.

### G.    Equal Protection

Ludwig claims that the named Defendants treated him differently than other similarly situated individuals, and that the disparate treatment lacked any rational basis or penological interest. (Compl. at 29.) Ludwig's equal protection claim, as pled, is not plausible because the Complaint does not include any factual allegations suggesting that the named Defendants acted

with an intent or purpose to discriminate against Ludwig based on his membership in a protected class.

In order to state an equal protection violation, Ludwig must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). While Ludwig alleges that he is disabled, he does not allege that he is a member of any other protected class and does not allege that the Defendants engaged in the complained of conduct because he was disabled or otherwise a member of a protected class. The claim is wholly undeveloped and, therefore, not plausible. *See Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (general allegations that plaintiff was treated "less favorably" are not sufficient); *Harris v. Centurion*, No. 21-739, 2021 WL 5177431, at *4 (D. Del. Nov. 8, 2021) (dismissing as frivolous inmate's equal protection claim because allegations were conclusory and inmate could not state a plausible equal protection claim). Accordingly, the Court will dismiss Ludwig's equal protection claims without prejudice. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts."). He will be granted leave to amend the claim.

### H.    Supervisory Liability

In his Complaint, Ludwig asserts that the Supervisory Defendants failed "to intervene, supervise, properly train or adequately discipline the subordinate defendants." (Compl. at 14.) The Court understands Ludwig to be asserting a claim against Superintendent Terra. However, the Complaint does not include any factual allegations describing conduct engaged in by Terra.

26

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

The first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then allege plausibly that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227.  A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).  "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

"Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.

As noted, Ludwig asserts in conclusory fashion that the Supervisory Defendants failed "to intervene, supervise, properly train or adequately discipline the subordinate defendants." (Compl. at 14.) He does not allege facts to support his claim and the claim, therefore, is not plausible. This claim will be dismissed. Ludwig will be granted leave to amend this claim in accordance with the foregoing.

## I.       State Law Claims

Ludwig asserts state law intentional infliction of emotional distress, breach of contract, conspiracy, and negligence claims against the Defendants.  Because the Court has dismissed Ludwig's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a).  Section 1332(a) grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Ludwig does not satisfy the second factor because he has not alleged complete diversity of citizenship among the parties.

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the

parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Ludwig does not allege the citizenship of the parties. Rather, he provides SCI Phoenix's address for himself and for all of the Defendants. (Compl. at 2-4.) In these circumstances, the Court cannot determine whether Ludwig and the Defendants are of diverse citizenship. Accordingly, because Ludwig has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue, those claims will be dismissed for lack of subject matter jurisdiction. Ludwig will be granted leave to amend these claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss with prejudice Ludwig's official capacity claims, his claims based on the Pennsylvania Constitution, his claims against McCafferty, Aguilar, and Strenkowski based on their handling of grievances, his Ninth Amendment claims, his Eighth Amendment claims, his Fourth Amendment claims, and his First Amendment retaliation claims against Cramp, Grennon, Porto, Wallace, Clemons, Grant, Watson, and Edwards. The Court will dismiss Ludwig's Equal Protection claims, his retaliation claim against Patterson, his claim against Defendant Terra, his Fourteenth Amendment due process claim, and his request for injunctive relief without prejudice for failure to state a claim.

31

Ludwig's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  Ludwig will be granted leave to file an amended complaint.

An appropriate Order follows.

**BY THE COURT:**

_____

**MIA ROBERTS PEREZ, J.**