IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE LUDWIG, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-1213 |
| | : | |
| JOSEPH TERRA, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**PEREZ, J.**                                                                                   **APRIL 30, 2026**

Currently before the Court is an Amended Complaint ("AC" (ECF No. 17)) filed *pro se*

by Plaintiff George Ludwig, a convicted prisoner currently incarcerated at SCI Phoenix.  The

AC, filed pursuant to 42 U.S.C. § 1983, asserts violations of Ludwig's rights.   Ludwig asserts

claims against the following SCI Phoenix employees: Superintendent Joseph Terra, Major

Fitzgerald-Young, Sergeant Cramp, Corrections Officer ("CO") Grennon, Lieutenant ("Lt.")

Patterson, Lt. McCafferty, Lt. Aguliar, Lt. Valdez, CO Wallace, CO Grant, CO Porto, CO

Clemons, CO Watson, and CO Edwards.  (AC at 3-5.)  For the following reasons, Ludwig's

Eighth Amendment claim against Grennon will be served for a responsive pleading.  The

remainder of his AC will be dismissed with prejudice for failure to state a claim pursuant to 28

U.S.C. § 1915A(b)(1).

**I.       FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

---

[1] The factual allegations set forth in this Memorandum are taken from Golden's Complaint (ECF No. 2).  The Court adopts the pagination supplied by the CM/ECF docketing system.  Where appropriate, grammar, spelling, and punctuation errors in Golden's pleading will be corrected for clarity.

The gravamen of Ludwig's original Complaint was that he was subjected to verbal harassment, threats, and regular body searches, primarily by CO Grennon and, when he filed grievances in response to this treatment, he was subjected to further retaliation by Grennon and the other Defendants named in the Complaint. *Ludwig v. Terra*, No. 25-1213, 2025 WL 2325654, at *1 (E.D. Pa. Aug. 12, 2025). Upon statutory screening, the Court dismissed with prejudice Ludwig's official capacity claims, his claims based on the Pennsylvania Constitution, his claims against McCafferty, Aguliar, and Strenkowski based on their handling of grievances, his Ninth Amendment claims, his Eighth Amendment claims, his Fourth Amendment claims, and his First Amendment retaliation claims against Cramp, Grennon, Porto, Wallace, Clemons, Grant, Watson, and Edwards. *Id*. at *15. The Court also dismissed without prejudice Ludwig's Equal Protection claims, his retaliation claim against Patterson, his supervisory liability claim against Defendant Terra, his Fourteenth Amendment due process claim, and his request for injunctive relief. *Id*. His state law claims were dismissed without prejudice for lack of subject matter jurisdiction. *Id*. Ludwig was granted leave to file an amended complaint. *Id*. The AC is ripe for screening.

The thrust of Ludwig's AC remains the same – he claims that he has been subject to retaliation by the named Defendants. Ludwig describes himself as disabled and disfigured and alleges that he relies on crutches and a wheelchair to accommodate his physical disability – an infected and deteriorating hip joint. (AC at 6-7.) He also alleges that in accordance with a prescribed pain management plan, he is issued medication three times daily. (*Id*.) He has also been prescribed antibiotics for a severe infection in his hip, which has also required surgery. (*Id*.) He alleges that the Defendants are aware of his disability because they have seen him using his crutches and wheelchair and have also seen him accompanied by a fellow inmate assigned to

assist him.  (*Id*. at 6.)  He asserts that they are aware of his special status as "handicap."  (*Id*. at

19.)  Ludwig also alleges that in addition to his physical disability, he suffers from a lifelong

addiction to opioids and marijuana.  (*Id*. at 7.)

Ludwig alleges that on March 6, 2023, during medication distribution, Defendant

Grennon searched, threatened, and demeaned him in the presence of other inmates. (*Id*. at 7.)

When he learned that Grennon had accused him of selling his pain medication, commenting that

"drug addicts should be shot," Ludwig filed a grievance.  (*Id*.)  The next day, a nurse told

Ludwig that Grennon had told him that Ludwig was selling his medication and that he should be

"checked real good."  (*Id*.)  The nurse required Ludwig to open his mouth wide in the course of a

search.  (*Id*. at 7-8.)

Grennon received notice of Ludwig's grievances at some time prior to March 9, 2023,

and on that date she told the nurse to give Ludwig "brake fluid," and referred to Ludwig as a

"white-boy druggie."  (*Id*. at 8.)   Beginning that day, Grennon engaged in a "pattern and routine

practice" of requiring Ludwig to remove his mask and open his mouth for inspection following

medication distribution.  (*Id*.)  On March 12, 2023, Grennon confronted Ludwig in the

medication line, yelling at him, "you f***in druggie, I will get you," while shoving Ludwig

against the wall, causing him to drop his crutches.  (*Id*.)  Three days later, again during

medication distribution, Grennon shoved Ludwig from behind, causing pain in his hip when he

lost his balance and shifted his weight, and mimicked spitting on his medication, encouraging

others to do the same, while "demeaning" Ludwig about his physical disability and drug

addiction.  (*Id*.)  The next day, Grennon allegedly threatened, harassed, and assaulted Ludwig

during all three of the daily medication distributions.  (*Id*. at 9.)  Also on March 16, 2023,

Defendants Edwards, Clemons, Watson, and Wallace confronted Ludwig while he was returning

to his cell from the medication line, stating, "you f*** with Ms. G, you f*** with us," and ordering him to drop his crutches and "get on" the wall for a search. (*Id*.) These Defendants allegedly continued a practice of confronting Ludwig upon seeing him in an effort to harass him in retaliation for filing a grievance against Grennon. (*Id*.)

On March 17, 2023, Ludwig was approached by Defendant McCafferty, who had been assigned to address Ludwig's grievances. (*Id*.) McCafferty told him that, "it would be in [his] best interests to sign off on withdrawing his grievances." (*Id*. at 9-10.) Ludwig does not state whether he agreed to do so, but Defendants Grennon, Edwards, Wallace, Clemons, and Watson allegedly continued harassing him in a manner that he claims constituted deliberate indifference to his interest in adequate care, and which, when they required him to put down his crutches or get up from his wheelchair, placed him in danger. (*Id*. at 10.)

On March 19, 2023, upon encountering Ludwig, Grennon instructed him to "get on the wall," causing him to suffer pain in his hip. (*Id*.) On March 29, 2023, Defendant Aguliar met with Ludwig and advised him that "it would be in his best interest to withdraw his grievance," suggesting that the harassment could continue if he did not. (*Id*.) On April 20, 2023, upon spotting Ludwig at medication distribution, Grennon freed the pepper spray on her utility belt and stated, "it's about to go down." (*Id*.)

At some point between March 16, 2023 and May 2, 2023, Grennon informed Defendant Cramp that Ludwig had filed a grievance against her, and also falsely informed Cramp that he was selling his medication. (*Id*. at 10-11.) On May 2, 2023, Defendant Cramp entered Ludwig's cell and, within view of other inmates, ordered him to pull down his pants and show Cramp his broken hip. (*Id*. at 11.) Ludwig responded that he needed to use the bathroom, and Cramp, along with other inmates, proceeded to watch Ludwig move his bowels. (*Id*.) Cramp also

instructed Ludwig to stand up, bend over and spread his legs to allow Cramp to perform a "pat search," knocking him off balance and causing pain. (*Id*.) Cramp also informed Ludwig that he had credible information and believed Ludwig to be "selling his medication," and that he was aware of his "harassment of Ms. G . . . f***in with her filing grievances against her." He warned Ludwig, "We'll get you." (*Id*.) Additionally, Cramp informed Ludwig that he had lost a family member to drug use, harbored a "hatred for drug dealers," and believed "it was his duty to make their lives miserable." (*Id*.)

Ludwig reported the incident to Defendants McCafferty and Strenkowski, neither of whom took steps as allegedly required by Department of Corrections ("DOC") Rules, Regulations and Policy. (*Id*. at 11-12.) Defendant Young[2] later interviewed Ludwig and advised him that neither McCafferty nor Strenkowski had taken any action on his behalf in accordance with DOC policy. (*Id*. at 12.) On May 11, 2023, Cramp was observed opening and reading Ludwig's personal mail in a further effort to harass and retaliate against him. (*Id*.) Despite complaining of this conduct to Defendant Valdez, no action was taken on Ludwig's behalf. (*Id*.)

On June 13, 2023 in the medication distribution area, Defendant Carter directed Defendant Grant to "get up on him (that white boy), he da one Grennon talking about." (*Id*. at 13.) Grant then ordered other inmates to "get back and watch me situate this f***in rat." (*Id*.) Grant then ordered Ludwig to drop his crutches, spread his feet, remove his mask and open his mouth to be searched. (*Id*.) On June 14, 2023, Ludwig was mistreated, harassed, humiliated, ridiculed, and threatened by Defendants Wallace, Watson, Edwards, and Clemons. (*Id*.) The next day, Grennon stopped Ludwig as he was leaving the medication distribution area and remarked, "you know what to do when you see Ms. G or are you druggie's memories that bad,"

---

[2] The Court understands Ludwig to refer to Defendant Fitzgerald-Young.

and "I heard you were the guest of honor at the party last night," a reference to the previous day's mistreatment by Wallace, Watson, Edwards, and Clemons. (*Id*.) The next day, Grennon and the other Defendants allegedly continued their deliberate engagement of Ludwig. (*Id*.)

On June 20, 2023, Defendant Wallace shouted in the presence of a dozen other inmates that Ludwig was a "rat." (*Id*. at 14.) The next day, Wallace threatened Ludwig with bodily harm and confronted him in a manner which caused Ludwig to lose his balance, causing pain. (*Id*. at 13.) Ludwig reported this conduct to Defendant Carter, who took no remedial steps. (*Id*.)

On August 4, September 18, and November 17, 2023, Grennon, and Wallace required Ludwig to walk and stand without his crutches while they performed searches, causing him to lose his balance and trip, causing pain. (*Id*. at 15.) Additionally, Grennon allegedly refused to permit Ludwig to obtain a haircut. (*Id*.) On September 18, 2023, Wallace informed more than 120 inmates that Ludwig was a "rat" and invited them to "handle him," allegedly in retaliation for Ludwig's filing of grievances against Grennon and Cramp. (*Id*.)

On November 17, 2023, while returning to his cell from the main yard, Ludwig was stopped and searched by Defendant Grennon, who struck his genitals while she patted him down. (*Id*.) Defendant Porto, too, allegedly grabbed Ludwig's penis and testicles during a search. (*Id*.) Ludwig suffered pain as a result of these incidents and now experiences difficulty urinating. (*Id*. at 15-16.) Although an investigation was launched, Ludwig learned that the evidence was insufficient to charge Porto with assault. (*Id*. at 16.)

On January 27, 2025,[3] Ludwig was summoned to the Hearing Examiner's Office where he learned that Defendant Patterson had issued an allegedly retaliatory false misconduct against

---

[3] The AC identifies the date as January 27, 2023, but the context of the AC suggests that the incident occurred in 2025.

6

him.  (*Id*.)  Ludwig asserts that this was done in collusion with Defendants Grennon, Cramp, Edwards, Clemons, Watson, Wallace, Porto, Grant, McCafferty, and Aguliar.  (*Id*.)  He claims he was not provided with a copy of the misconduct report but was required to defend himself without it.  (*Id*. at 18.)  Without prior notice, he was unable to investigate, prepare his defense, or obtain witnesses or evidence, in violation of his due process rights.  (*Id*.)  On February 13, 2025, Ludwig was allegedly denied parole based upon the false misconduct.  (*Id*. at 16-17.)

Ludwig alleges that Defendants Fitzgerald-Young, Terra, Valdez, and Patterson were advised of the conduct engaged in by the other Defendants through verbal communications, grievances, or appeals from grievances.  (*Id*. at 17.)  He alleges that, moreover, they had knowledge of the requirements of the "PA DOC Administrative Directive."  (*Id*.)   Additionally, Terra exercised authority over all of the named Defendants.  (*Id*.)  Ludwig claims that none of the Defendants has completed a "DC-121" incident report, as required by DOC Policy, Rules and Regulations.  (*Id*. at 18-19.)

Ludwig claims that as a result of Defendants' conduct, he has experienced pain and suffering, discrimination, harassment, downward classification, interference with his medical regimen, and deprivation of a fair parole hearing.  (*Id*. at 3.)  He asserts First Amendment retaliation claims, Fourteenth Amendment equal protection and due process claims, claims based on the Defendants' violation of Department of Corrections Policies, and supervisory liability claims.  (*Id*.)  He seeks money damages.  (*Id*. at 25-26.)

## II.    STANDARD OF REVIEW

Although Ludwig has paid the filing fee in full, because he is a prisoner the Court has the authority to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the

authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Ludwig is proceeding *pro se*, the Court construes his allegations liberally.  *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient

facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).  An

unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that

apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*,

No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must

liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se

litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not

require the court to act as an advocate to identify any possible claim that the facts alleged could

potentially support.").

## III.    DISCUSSION

Ludwig asserts claims based on alleged violations of his constitutional rights.  The

vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. §

1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to

be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957

F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal

direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See*

*Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983

suits, a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution").

### A.    Due Process Claims

#### 1.    Claim Based on Denial of Parole

9

Ludwig alleges that on January 27, 2025, he was summoned to the Hearing Examiner's Office where he learned that Defendant Patterson had issued an allegedly retaliatory false misconduct against him.  (AC at 16.)  He claims he was not provided with a copy of the misconduct report but was required to defend himself without it.  (*Id*. at 18.)  Without prior notice, he was unable to investigate, prepare his defense, or obtain witnesses or evidence, in violation of his due process rights, and the Court infers he was found guilty.  (*Id*.)  Ludwig alleges that he was subsequently denied parole based upon the false misconduct.  (*Id*. at 16-17.)  He claims that he was thereby denied his Fourteenth Amendment right to fundamental fairness to be free of arbitrary decision making at the Parole Board hearing.  (*Id*. at 21-22.)  The Court understands Ludwig to be asserting a Fourteenth Amendment due process claim based on the denial of parole.  This claim is not plausible.

A convicted individual has no constitutionally protected liberty interest in parole or otherwise being released before the expiration of a valid sentence.  *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Thomas v. Buechele*, 569 F. App'x 93, 95 (3d Cir. 2014) (concluding that no due process violation caused by delayed parole because the plaintiff had "not alleged the deprivation of a protected liberty interest").  Nor does Ludwig have any right to parole based on Pennsylvania law.  *See Weaver v. Pennsylvania Bd. of Prob. & Parole*, 688 A.2d 766, 770 (Pa. Commw. Ct. 1997) ("Because it is a favor, a prisoner has neither an absolute right to parole nor a liberty interest in receiving parole."); *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing the general principle that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same.").

Since Ludwig has no constitutionally protected liberty interest in parole, his due process claim based on the denial of parole allegedly attributable to Patterson's issuance of the false misconduct is not plausible. *See, e.g.*, *Mutschler v. Tritt*, No. 14-1611, 2018 WL 4184320, at *4–6 (M.D. Pa. Aug. 31, 2018) (dismissing prisoner's claim that his liberty interests were infringed when the issuance of a misconduct charge prevented him from being considered for parole), *aff'd*, 765 F. App'x 653 (3d Cir. 2019). Ludwig's due process claim will be dismissed with prejudice to the extent it is premised upon Patterson's issuance of a false misconduct and the resulting denial of parole.

### 2. Due Process Claim Based on Issuance of False Misconduct

As noted, Ludwig alleges that on January 27, 2025, he was summoned to the Hearing Examiner's Office where he learned that Defendant Patterson had issued an allegedly retaliatory false misconduct against him. (AC at 16.) He claims he was not provided with a copy of the misconduct report but was required to defend himself without it. (*Id*. at 18.) Without prior notice, he was unable to investigate, prepare his defense, or obtain witnesses or evidence, in violation of his due process rights, and the Court infers he was found guilty. (*Id*. at 16.) The Court understands him to be reasserting the Fourteenth Amendment due process claim against Patterson that he included in his original Complaint. The claim, however, is not plausible.

The Court has previously explained that, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process." *Ludwig*, 2025 WL 2325654, at *10 (quoting *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*)). Instead, "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*). More specifically, a convicted prisoner cannot state a

11

claim based on the filing of false disciplinary charges against him where he has received a hearing where he could rebut the charges. *See, e.g.*, *Talley v. Griesmer*, No. 19-3796, 2023 WL 3002742, at *2 (3d Cir. Apr. 19, 2023) (*per curiam*) ("The filing of false disciplinary charges does not violate the Constitution as long as the inmate was granted a hearing and an opportunity to rebut the charges."); *London v. Evans*, No. 19-559, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges."); *King v. Quigley*, No. 18-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019) (finding that the plaintiff had failed to state a due process claim premised on a false misconduct report where he had not alleged that there were no procedural protections provided).

Ludwig again alleges that he learned of the misconduct and that a hearing on the misconduct was immediately held. (AC at 16.)  Although he alleges he was not provided with written notice of the misconduct prior to the hearing, he does not allege that he was denied the opportunity to rebut the charges included in the misconduct. (*See id.*)  Because the allegations in the AC reflect that he was granted some level of procedural protection, Ludwig has not stated a plausible claim, and this claim will be dismissed with prejudice.

### B.      Claims Based on Failure to Adhere to DOC Policies

Ludwig alleges that he told McCafferty and Strenkowski that Cramp had forced him to take down his pants and move his bowels in front of Cramp and other inmates, that he then forced Ludwig to bend over for a thorough search, again in front of others, and then threatened Ludwig. (AC at 11-12.)  He further alleges that neither McCafferty nor Strenkowski took remedial steps allegedly as required by DOC Rules, Regulations and Policy. (*Id.*)  Similarly, Ludwig alleges Defendants Fitzgerald-Young, Terra, Valdez, and Patterson were advised of the

conduct engaged in by the other Defendants through verbal communications, grievances, or appeals from grievances.  (*Id*. at 17.)  Moreover, despite their knowledge of the requirements of the "PA DOC Administrative Directive," none of these Defendants completed a "DC-121" incident report, as required by DOC Rules, Regulations and Policy.  (*Id*. at 18-19.)  To the extent Ludwig seeks to assert a claim based on the alleged failure of these Defendants to adhere to written prison policies, these claims are not plausible.

"As many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Hernandez-Santana v. Little*, No. 24-6447, 2025 WL 2538435, at *5 (E.D. Pa. Sept. 3, 2025) ("a violation of internal prison procedures does not create a constitutional violation"); *Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)).  Accordingly, because a failure to adhere to policies is not alone a constitutional violation, these claims will be dismissed with prejudice.

###### C.    Eighth Amendment Claims[4]

---

[4] Previously, the Court considered and dismissed with prejudice Ludwig's (1) Eighth Amendment claims against Defendants Cramp, Grennon, Wallace, Clemons, Grant, Watson and Edwards based on verbal and physical threats and harassment; (2) claims against Grennon and Porto based on alleged improper touching of his genitals during searches; and (3) his claims against Wallace and Grant based on them referring to him as a rat in front of other inmates. *Ludwig*, 2025 WL 2325654, at *6-*8. While Ludwig has included those claims in his AC, he has not sought reconsideration of that decision. *See* E.D. Pa. L.R. 7.1(g) (requiring a motion for

In his AC, Ludwig claims that Cramp, Grennon, Wallace, Grant, Porto, Clemons, Watson, and Edwards engaged in acts of retaliation designed to cause him injury, in violation of his Eighth Amendment rights.  (*Id*. at 21.)  More specifically, he realleges that these Defendants engaged in a pattern of harassment that included verbal and physical threats, and includes allegations that the Defendants, who were aware that he was disabled, on occasion required him to put down his crutches or stand up from his wheelchair so that they could perform searches, and that they occasionally bumped or shoved him, causing him to lose balance, which caused pain in his hip.

The Court previously reviewed the law governing Eighth Amendment claims based on threats, explaining that correctional officers' threats to inmates alone do not violate the Eighth Amendment.  *Ludwig*, 2025 WL 2325654, at *6 (citations omitted).  In his AC, Ludwig, alleges that he was shoved during searches, which caused him pain.  In particular, he alleges that Grennon shoved him on March 12, 2023 and March 15, 2023, Grennon deliberately shoved him, causing him to drop his crutches, and causing him to lose balance and shift his weight, causing pain in his infected him.  (AC at 8.)  In light of the pain caused by the deliberate shoves, and in light of Grennon's alleged awareness of Ludwig's existing pain and mobility problems, at this stage of the litigation, Ludwig has plausibly stated an Eighth Amendment claim against Grennon and this claim will be served for a responsive pleading.  *See, e.g., Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (*per curiam*) ("An inmate who complains of *a push or shove that causes no discernible injury* almost certainly fails to state a valid excessive force claim." (emphasis

---

reconsideration or reargument to be filed within 14 days, providing the time applicable to interlocutory orders including where cases are screened under 28 U.S.C. § 1915(e)(2)(B)(ii) resulting in only a partial dismissal of claims or a dismissal without prejudice and with leave to file an amended complaint.).  Accordingly, the claims are no longer part of this case.

added)); *Sears v. McCoy*, 815 F. App'x 668, 670 (3d Cir. 2020) (holding that dismissal at screening of Plaintiff's verbal harassment claim was proper and noting that "[a] prisoner's allegations of verbal harassment, *unaccompanied by another injury*, are not cognizable under § 1983") (emphasis added).

Ludwig does not allege that any of the other Defendants engaged in conduct that resulted in pain. As such, he has not stated plausible Eighth Amendment claims against them, and these claims will be dismissed with prejudice. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

## D.     Retaliation Claims

Prviously, the Court considered and dismissed with prejudice Ludwig's First Amendment retaliation claims against Grennon, Cramp, Wallace, Grant, Strenkowski, Porto, Clemons, Watson, and Edwards because the verbal threats and harassment to which they subjected him after he filed grievances did not amount to adverse action for purposes of First Amendment retaliation. *Ludwig*, 2025 WL 2325654, at *11 (citations omitted). His amended allegations – that in addition to verbally threatening and harassing him in response to his filing of grievances, the Defendants occasionally shoved or pushed him, causing no discernible injury – do not constitute adverse action because they are equally *de minimis*. Ludwig also claims that Patterson, Cramp, Grennon, Wallace, Grant, Porto, Clemons, Watson, and Edwards retaliated against him by colluding with Patterson to support him in his issuance of a false misconduct, to which Ludwig attributes the subsequent denial of parole. (AC at 21-22.) This claim is not plausible.

15

As the Court has already explained, although a prisoner has no constitutional right to a grievance process, *see Gerholt*, 858 F. App'x at 34, a prisoner can state a claim based on retaliation for filing a grievance. *Ludwig*, 2025 WL 2325654, at *11 *(*citing *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (holding that a prisoner's filing of a grievance is constitutionally protected conduct) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)). In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell*, 318 F.3d at 530; *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

16

Ludwig satisfies the first element of the claim based on his filing a grievance.  However, Ludwig alleges no facts tying the Parole Board's 2025 decision to deny parole to his filing of grievances in 2023.  He, therefore, has not plausibly established that his protected conduct was "a substantial or motivating factor" for the adverse action.  *See id.* at 423 (holding that timing between protected conduct (filing lawsuit) and adverse action (confiscation of radio) two years later "just too remote to suggest a retaliatory motive").  Accordingly, this claim will be dismissed.

Ludwig reasserts his claim, previously dismissed without prejudice, that Patterson issued him a false misconduct in retaliation for Ludwig filing grievances against Patterson's co-workers.  (AC at 23.)  This claim was previously dismissed because the timing of the issuance of the misconduct in early 2025 was not suggestive of retaliation for the grievances Ludwig allegedly filed in 2023.  *Ludwig*, 2025 WL 2325654, at *12.  The AC does not cure this deficiency by alleging facts suggesting a causal link between grievances filed in 2023 and a false misconduct issued in 2025, thus the claim is, again, not plausible.  As Ludwig has already been given an opportunity to cure the defects in his claim against Patterson and has been unable to do so, the Court concludes that further amendment would be futile.  *See Jones*, 944 F.3d at 483.  This claim will be dismissed with prejudice.

### E.      Equal Protection Claims

Previously, the Court dismissed as not plausible Ludwig's Fourteenth Amendment equal protection claim because he did not allege that the Defendants acted with the intent or purpose to discriminate against him based on his membership in a protected class.  *Ludwig*, 2025 WL 2325654, at *12.  In his AC, Ludwig asserts equal protection claims against Patterson, Cramp, Grennon, Wallace, Grant, Porto, Clemons, Watson, and Edwards, alleging that they

discriminated against him because of his medical disability and drug addiction and thereby denied him his right to equal protection under the Fourteenth Amendment.  (AC at 23.)  The claim is not plausible.

As the Court previously explained, in order to state an equal protection violation, Ludwig must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class."  *Ludwig*, 2025 WL 2325654, at *12 (citing *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016)).  In his AC, Ludwig alleges that he is disabled, and that the Defendants were aware of his disability.  (*See* AC at 6-7, 19.)  However, disability is not a suspect classification under the Equal Protection clause.  *Anderson v. Kauffman*, No. 22-0226, 2023 WL 1805837, at *6 (M.D. Pa. Feb. 7, 2023) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985)).  Thus, Ludwig has not plausibly alleged an equal protection claim against the named Defendants.  As Ludwig has already been given an opportunity to cure the defects in his equal protection claim and has been unable to do so, the Court concludes that further amendment would be futile.  *See Jones*, 944 F.3d at 483. This claim will be dismissed with prejudice.

### F.   Supervisory Liability Claims

Previously, the Court dismissed Ludwig's supervisory liability claim, which he asserted against Terra only without prejudice because the claim was conclusory and undeveloped. *Ludwig*, 2025 WL 2325654, at *13-*14.  In his AC, Ludwig reasserts this claim against Terra, and also adds claims against Fitzgerald-Young, Patterson, McCafferty, Aguliar, and Cramp in their supervisory capacities.  (AC at 24.)  In support of these claims, he alleges that they knew or should have known about their subordinates' mistreatment of him, and despite their duties under

DOC policy and the law, they failed to intercede, stop the mistreatment, and discipline the other named Defendants. (*Id.*) The claims are not plausible as pled.

As the Court has already explained, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' A director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the

19

person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

The first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then allege plausibly that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions

20

demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

"Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.

Ludwig does not allege that these Defendants established or maintained a custom or policy that resulted in Grennon's violations of his constitutional rights – the only violations found to have occurred. Nor does he allege that the Defendants failed to train Grennon in spite of their awareness of, or indifference to, the risk that additional or different training was required to avoid a violation s his rights. As such, he has not stated a plausible supervisory liability claim.

21

As Ludwig has already been given an opportunity to cure the defects in his supervisory liability claim and has been unable to do so, the Court concludes that further amendment would be futile. *See Jones*, 944 F.3d at 483. These claims will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Ludwig's Eighth Amendment claim against Grennon will be served for a responsive pleading.  The remainder of his AC will be with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

An appropriate Order follows.

BY THE COURT:

_____

**HON. MIA R. PEREZ**